UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHARLES E. WARD, et al., | Case No. 19-cv-03423-LB |
| Plaintiffs, | |
| | **ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |
| v. | |
| UNITED AIRLINES, INC., | Re: ECF No. 42 |
| Defendant. | |

**INTRODUCTION**

The plaintiffs are a retired pilot and two flight attendants who — on behalf of themselves and putative classes — sued their employer United Airlines, claiming that United violates California law by how it pays flight crew on "reserve" status. Reserve status means that the pilots and flight attendants are on call for flight assignments (in contrast to other flight crew who bid for and fly on assigned schedules).

Employment and payment for all pilots and flight attendants are governed by negotiated provisions in collective bargaining agreements (CBAs). The CBAs compensate flight crew on reserve status based on the higher of (1) the time spent on flight-related activity or (2) a minimum guarantee. The plaintiffs contend that this is illegal borrowing from flight time to compensate for on-call reserve time, in violation of the "no-borrowing" rule in *Oman v. Delta Air Lines, Inc.* 9 Cal. 5th 762, 781 (2020). They thus sued for recovery of allegedly unpaid wages based on (1)

unjust enrichment (on a theory of quantum meruit/quasi-contract) for uncompensated hours (calculated by multiplying the hourly rate by the unpaid hours on on-call reserve status) (claim one), (2) unpaid minimum wages (for all hours on reserve status) under the California Labor Code (claim two), (3) unpaid contractual wages under the Labor Code (claim three), and (4) restitution of unpaid wages for unfair business practices (predicated on the Labor Code violations) under California's Unfair Competition Law (claim five). The complaint has a derivative claim for waiting-time penalties under the Labor Code (claim four) and claims for penalties under California's Private Attorneys General Act (PAGA) predicated on the minimum-wage, unpaid-contractual-wage, and waiting-time claims (claims six, seven, and eight).[1]

The plaintiffs moved to certify, and the court certifies, two classes: California-based pilots and California-based flight attendants.[2]

## STATEMENT

The parties agree on the facts about United's payroll policy for flight crew on reserve status, meaning, on-call crew (as opposed to those with a known schedule). The payroll policy (set forth in negotiated CBAs) provides that for any "bid period" (meaning, the monthly pay period), the pay is the higher of the (1) the time spent on flight-related activity or (2) a minimum-pay guarantee.[3]

A reserve pilot's pay illustrates how this works. Generally, reserve pilots work up to 18 reserve days during any bid period, with no more than six days in a row and at least two consecutive days off between blocks of reserve time.[4] There are different types of reserve status: (1) long-call status (13-hour advance notice of flights); (2) short-call status (different advance notice); and (3) field-standby status (requiring the pilot to be at the airport).[5] Different rules apply

---

[1] Second Am. Compl. (SAC) – ECF No. 35 at 6–7 (¶¶ 13–15), 10–17 (¶¶ 24–48); Carlson Dep., Ex. A to KohSweeney Decl. – ECF No. 45-1 at 11–12 (pp. 49:3–50:5); Krabbe Dep., Ex. B to *id.* – ECF No. 45-1 at 45-1 at 56–57 (pp. 71:17–72:4). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 42.

[3] Opp'n – ECF No. 45 at 5–6; Reply – ECF No. 47 at 2.

[4] Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 42-3 at 19–21 (pp. 49:3–51:22).

[5] *Id.* at 22–26 (pp. 52:7–57:11).

— such as conversion between long-call and short-call status, the time to report for duty (to allow preflight tasks), and the release time after flights (to allow post-flight tasks) — but reserve pilots in the end are paid the same way: at the end of the bid period, United pays the pilots the greater of (1) the line-pay value or (2) a minimum-pay guarantee. The line-pay value is based on the pilot's trips and activities during the bid period and is based on factors such as minutes away from the pilot's base airport, minutes on duty, calendar days away from the base airport, and the greater of actual or scheduled flight time paid at the pilot's hourly rate. It also includes pay factors such as size and type of aircraft and the pilot's position on the flight (captain or first officer). The minimum-pay guarantee is a simple calculation: United pays a pilot for four hours, three minutes, and 20 seconds for each day the pilot is on reserve status (whether long-call, short-call or field-standby status) paid at the pilot's hourly rate.[6]

Pay records for named plaintiff Charles Ward for the April 2015 bid period — when he was on reserve status — show this scheme.[7] His pay statement (called a "pay register") shows his reserve status with the letter "R" under the subheading "RSV."[8] His line-pay value was $19,262,43 (for 92 hours and 34 minutes of flight trips or other allowed time), and his minimum-pay guarantee was $15,188.38 (for 73 hours on reserve). United thus paid him the higher line-pay value.[9] According to the plaintiffs, this meant that United either did not pay him for his reserve time or borrowed time from his line-value pay to cover reserve time.[10]

---

[6] Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 42-3 at 27–28 (pp. 58:8–59:10), 42–47 (pp. 132:13–14118); Ward Decl. – ECF No. 42-1 at 7 (¶ 12); Carlson Dep., Ex. A to KohSweeney Decl. – ECF No. 45-1 at 26 (pp. 80:2–17); United Pilot Agreement, Ex. 2 to Hanson Decl. – ECF No. 42-3 at 68–69. The plaintiffs originally contended that United also made a third pay calculation called protected-time credit but then conceded that the calculation does not apply to reserve pilots. Mot. – ECF No. 42 at 15; Reply – ECF No. 47 at 3.

[7] Ward Decl. – ECF No. 42-1 at 2 (¶ 2).

[8] Ward April Pay Register, Ex. 1 to Ward Decl. – ECF No. 42-1 at 13.

[9] Id.; Ward Decl. – ECF No. 42-1 at 7–8 (¶ 13).

[10] Mot. – ECF No. 42 at 16.

United States District Court
Northern District of California

1   By contrast, for the August 2015 bid period, Mr. Ward's line-pay value was $12,245 (for 58

2   hours and 39 minutes of trips and allowed time) and a minimum guarantee of $15,188.38 (for 73

3   hours on reserve). United thus paid him the higher minimum-guarantee value for his reserve time.[11]

4   Reserve flight attendants have a different bid process, but United pays them similarly: the

5   greater of (1) the line-pay value or (2) a minimum-pay guarantee (based on 78 hours per bid

6   period). During each bid period, United sends reserve attendants a schedule with days of availability

7   and days off. On days of availability, flight attendants can be assigned a trip and convey their

8   preference to work certain trips that are available. United then assigns the trips —based on seniority

9   and preference — the day before (either assigning a trip, releasing the attendant, or requiring the

10  attendant to be on call or on standby).[12] Like the rules for pilots, different rules apply for assigned

11  trips — such as the time to report based on the type of craft to allow preflight tasks — but reserve

12  attendants in the end are paid the same way as reserve pilots: at the end of the bid period, United

13  pays the greater of the minimum-pay guarantee or the line-pay value.[13]

14  Pay records for named plaintiff Felicia Vidrio for the November 2019 bid period — when she

15  was on reserve status — show this scheme. United paid her line-pay value of $4,311.44 (for 65

16  hours and 32 minutes of flight time) because it was higher than her minimum-pay guarantee.[14]

17  According to the plaintiffs, this meant that United either did not pay her for her reserve time or

18  borrowed time from her line-value pay to cover reserve time.[15]

19  Based on this alleged failure to pay wages, the plaintiffs moved to certify two classes under

20  Federal Rule of Civil Procedure 23(b)(2) and (b)(3) for California-based pilots and California-

21  based flight attendants:

22      **Pilot Class**: All pilots employed by United Airlines, Inc. at any time between April 2015
        and the final judgment in this action (the "Covered Time"), who, at any time during the

23

24  [11] Ward Decl. – ECF No. 42-1 at 8 (¶ 13); Ward August Pay Register, Ex. 5 to Ward Decl. – ECF No. 42-1 at 24–25.

25  [12] Krabbe Dep., Ex. 4 to Hanson Decl. – ECF No. 42-3 at 99–102 (pp. 71:13–74:5).

26  [13] *Id*. at 91–94 (pp. 24:4–27:24), 95–96 (pp. 30:2–31:23), 104–06 (pp. 76:1–78:17).

27  [14] Vidrio Decl. – ECF No. 42-2 at 4–6 (¶¶ 6–8); Vidrio Nov. 2019 Pay Register, Ex. 1 to *id*. – ECF No. 42-2 at 11–13.

28  [15] Mot. – ECF No. 42 at 22.

Covered Time were classified as a reserve pilot in any bid period in which they were also a California resident domiciled/home-based at a California airport, and who were compensated for that reserve bid period under a pay scenario that was not minimum page guarantee (e.g. "MPG").

**Flight Attendants Class:** All flight attendants employed by United Airlines, Inc. at any time between April of 2015 and the final judgment in this action (the "Covered Time"), who, at any time during the Covered Time were classified as a reserve flight attendant in any bid period in which they were also a California resident domiciled/home-based at a California airport, and who were compensated for that reserve bid period under any pay scenario that was not minimum pay guarantee (e.g. "MPG").[16]

## ANALYSIS

Class actions are governed by Federal Rule of Civil Procedure 23. A party seeking to certify a class must prove that all the prerequisites of Rule 23(a) are met, as well as those of at least one subsection of Rule 23(b) (and the relevant subsections here are (b)(2) and (b)(3)).

The following are the prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A court may certify a class under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A court may certify a class under Rule 23(b)(2) for injunctive or declaratory relief if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

"[P]laintiffs wishing to proceed through a class action must actually *prove* — not simply plead — that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

---
[16] *Id*. at 6.

350–51 (2011); *Comcast Corp. v. Behrend*, 569 U.S. 27, 32–33 (2013)). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied.'" *Comcast*, 569 U.S. at 33 (quoting *Wal-Mart*, 564 U.S. at 350–51). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* at 33–34 (quoting *Wal-Mart*, 564 U.S. at 351). "That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 34 (quoting *Wal-Mart*, 564 U.S. at 351). Still, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (citing *Wal-Mart*, 564 U.S. at 351 n.6).

The court certifies Rule 23(b)(2) and (b)(3) classes because the plaintiffs have met all Rule 23 prerequisites.

## 1. Rule 23(a) Prerequisites

### 1.1    Numerosity — Rule 23(a)(1)

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." There is no absolute minimum class size for establishing numerosity, but courts have held that classes as small as 40 satisfy the numerosity requirement. *See, e.g.*, *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 294 (N.D. Cal. 2018); *In re Lidoderm Antitrust Litig.*, No. 14-cv-02521-WHO, 2017 WL 679367, at *13 (N.D. Cal. Feb. 21, 2017). The plaintiffs provide evidence that the classes are at least in the hundreds.[17] United does not dispute numerosity. The plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.

### 1.2    Commonality — Rule 23(a)(2)

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." "What matters to class certification is not the raising of common questions — even in droves — but,

---

[17] United Responses to First Set of Interrog., Ex. 3 to Hanson Decl. – ECF No. 42-3 at 74–81.

United States District Court
Northern District of California

rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (cleaned up) (quoting *Wal-Mart*, 564 U.S. at 350). "To satisfy Rule 23(a)(2) commonality, 'even a single common question will do.'" *Id.* (cleaned up) (quoting *Wal-Mart*, 564 U.S. at 359).

The plaintiffs established a common question that predominates by challenging how United pays its reserve pilots and flight attendants. If United pays the higher line-pay value instead of a lower minimum-pay guarantee, United allegedly violated California law, either because it did not pay for reserve time or because it borrowed time from line-value pay to cover reserve time.

United challenges commonality (and predominance) on two grounds: (1) the different formulas for calculating the line-pay value for the flight crew have individualized variables, and (2) not all class members are subject to California law.[18] These arguments do not change the outcome.

First, the different formulas for the line-pay value do not defeat commonality. Different factors affect the pay for flight crew such as (for pilots) seniority, time away from the base airport, and size and type of aircraft and (for flight attendants) the time to report based on the type of craft. But for both pilots and flight attendants, at the end of the bid period, United pays the greater of the minimum-pay guarantee or the line-pay value. United allegedly violates the *Oman* no-borrowing rule when it pays the line-pay value (calculated on formulas that are undisputed and part of the negotiated CBAs) and thus allegedly does not pay for the reserve time (or borrows time from line-value pay to cover reserve time).[19] *Cf. Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL 1161504, at *2–4 (N.D. Cal. Mar. 23, 2016) (where plaintiff's "theory is not that United provided inaccurate statements of hourly rates or hours worked," the "complex multi-factor formula [for pay rate determination] . . . is irrelevant"). This is a calculation that can be made from the wage statements, which have a uniform format and can serve as a common form of proof

---

[18] Opp'n – ECF No. 45 at 13–16.

[19] Reply – ECF No. 47 at 5.

1    because they show the line-pay value and the minimum-pay guarantee.[20] United does not

2    meaningfully dispute this.

3        Second, in a one-paragraph argument citing the California Supreme Court's decision in *Ward*

4    *v. United Airlines*, United contends that the plaintiffs have not shown that all class members are

5    subject to California law because they have not shown that the flight crew work principally in

6    California.[21] *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 760–61 (2020). In *Ward*, the court held

7    that United needed to provide wage statements that complied with the California Labor Code only

8    to airline employees who work principally in California. *Id.* "This test is satisfied if the employee

9    works a majority of the time in California or, for interstate transportation workers whose work is

10   not primarily performed in any single state, if the worker has his or her base of work operations in

11   California." *Id*. United contends that (1) the plaintiffs have not shown that each class member

12   either works within California or is based in California and does not work more than 50 percent in

13   any other state and (2) these employee-specific issues defeat commonality and predominance.[22]

14       *Ward* applies to United's obligation to provide wage statements that comply with Labor Code

15   § 266, which is not a claim at issue here.[23] Moreover, even if *Ward* applies, apparently all class

16   members are based at California airports and do not perform the majority of work in any one

17   state.[24] *Ward v. United States*, --- F.3d ---, No. 16-16415, 2021 WL 345578, at *2, 9 (9th Cir. Feb.

18   2, 2021) (the nature of their flight schedules is that pilots and flight attendants typically do not

19   work a majority of their time in any state, including California; the parties agree that most class

20   members satisfy the *Ward* test because they are based in California and do not perform the

21   majority of their work in any one state); *accord Ward*, 2016 WL 1161504 at *4–5 (rejecting

22   similar argument and certifying class).

23       In sum, the plaintiffs have shown commonality.

24

25   [20] *E.g.*, Ward April 2015 Pay Register, Ex. 1 to Ward Decl. – ECF No. 42-1 at 13.

26   [21] Opp'n – ECF No. 45 at 15–16.

     [22] *Id.* at 16.

27   [23] SAC – ECF No. 35 at 10–17 (¶¶ 24–48).

28   [24] Reply – ECF No. 47 at 6 (citing discovery responses).

United States District Court
Northern District of California

### 1.3    Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "The test of typicality serves to ensure that the interest of the named representative aligns with the interests of the class." *Torres*, 835 F.3d at 1141 (quotation omitted). "Under the Rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (quotation omitted). "In this context, typicality refers to the nature of the claim or defense and not to the specific facts from which it arose or the relief sought." *Id.* "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation omitted). Put another way, "[t]ypicality is present 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability.'" *In re Qualcomm*, 328 F.R.D. at 295 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)).

United does not dispute typicality. In any event, the named plaintiffs' claims are typical of the classes' claims. All claims are identical: United's alleged violation of *Oman*'s no-borrowing rule when it pays the line-pay value instead of the minimum-guarantee value (thereby allegedly not paying for reserve time or borrowing time from line-value pay to cover reserve time).

### 1.4    Adequacy — Rule 23(a)(4)

Rule 23(a)(4) requires that "the representative parties [] fairly and adequately protect the interests of the class." "This adequacy requirement . . . 'serves to uncover conflicts of interest between named parties and the class they seek to represent' as well as the 'competency and conflicts of class counsel.'" *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926 F.3d 539, 566 (9th Cir. 2019) (en banc) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997)). "To determine legal adequacy, [courts] resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

There are no conflicts: the named plaintiffs' interests are aligned with class members because their claims are identical. The plaintiffs maintain that they will prosecute the case vigorously through counsel and are diligently participating in the case.[25] Class counsel is adequate in all relevant respects. Under Rule 23(g)(1)(A), the court considers the following criteria: (1) counsel's work in identifying and investigating potential claims in the action; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the particular law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court also "considers any other matter pertinent to counsel's ability to fairly and adequately represent the class." Fed. R. Civ. P. 23(g)(1)(B). Counsel have extensive experience in litigating class actions, they are proficient in the applicable law, and they have the necessary resources to prosecute this action to the end.[26] *Accord Ward*, 2016 WL 1161504 at *7.

United does not dispute the lack of conflicts or the adequacy of class counsel. Instead, it contends that Mr. Ward is an inadequate class representative because he is retired and thus lacks standing to seek injunctive and declaratory relief.[27] The plaintiffs counter that Mr. Ward is not the representative for the injunctive relief claim: Ms. Vidrio, who is a current employee, is.[28] This is sufficient because her claims are identical to the pilots: United's alleged violation of *Oman*'s no-borrowing rule when it pays the line-pay value instead of the minimum-guarantee value. "In a class action, standing is satisfied if at least one named plaintiff meets the requirement." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *cf. NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class") (cleaned up).

---

[25] Ward Decl. – ECF No. 42-1 at 8–9 (¶¶ 14–16); Vidrio Decl. – ECF No. 42-2 at 6–7 (¶¶ 9–11); Hanson Decl. – ECF No. 42-3 at 5 (¶¶ 7–9); Jackson Decl. – ECF No. 42-4 at 4 (¶ 9).

[26] Hanson Decl. – ECF No. 42-3 at 2–6 (¶¶ 3–10).

[27] Opp'n – ECF No. 45 at 18–19.

[28] Reply – ECF No. 47 at 9.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 2.  Rule 23(b) Prerequisites

#### 2.1  Predominance — Rule 23(b)(3)

Among other things, Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As discussed above, the plaintiffs established a common question that predominates by challenging United's alleged violation of *Oman*'s no-borrowing rule when it pays the line-pay value instead of the minimum-guarantee value.

#### 2.2  Superiority – Rule 23(b)(3)

Rule 23(b)(3) requires a class proponent to show that the class action is the superior method for adjudicating the dispute. Factors to be considered in weighing this question include the following: (1) class members' interest in individually controlling the litigation; (2) the extent and nature of the litigation; (3) the desirability of concentrating the claims in one suit; and (4) the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A)–(D); *Leyva v. Medline Inds. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

United contends that the plaintiffs cannot show superiority because pilots and flight attendants can pursue a grievance process under the CBA or pursue streamlined claims with the California Division of Labor Standards Enforcement.[29] Given the predominance of common questions, a class action is more efficient that pursuing United's proposed alternatives. *Ward*, 2016 WL 1161504 at *7 (rejecting identical argument). Also, the complaint has PAGA claims.

United also contends that the class definitions require individual factfinding to determine United's liability and each putative class member's right to recovery, rendering the case administratively unfeasible.[30] As discussed above, the individualized factors do not affect the issue

---

[29] *Id*. at 16.

[30] *Id.* at 17.

1  in the case: payment of line-pay value instead of the minimum-guarantee value, which can be

2  determined from the pay statements.

3      A class action is superior.

4  **2.3    Acting on Grounds That Apply Generally to the Class — Rule 23(b)(2)**

5      A court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or

6  refused to act on grounds that apply generally to the class, so that final injunctive relief or

7  corresponding declaratory relief is appropriate respecting the class as a whole[.]"

8      "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy

9  warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only

10  as to all of the class members or as to none of them.'" *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957,

11  971 (9th Cir. 2019) (quoting *Wal-Mart*, 564 U.S. at 360). "In other words, Rule 23(b)(2) applies

12  only when a single injunction or declaratory judgment would provide relief to each member of the

13  class. It does not authorize class certification when each individual class member would be

14  entitled to a different injunction." *Id.* (quoting *Wal-Mart*, 564 U.S. at 360).

15      Rule 23(b)(2) "does not require [courts] to examine the viability or bases of class members'

16  claims for declaratory and injunctive relief, but only to look at whether class members seek uniform

17  relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir.

18  2010). "[I]t is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a

19  pattern or practice that is generally applicable to the class as a whole." *Id.* (quotation omitted). "The

20  fact that some class members may have suffered no injury or different injuries from the challenged

21  practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.* (citation

22  omitted). "Furthermore, unlike actions brought under one of the other 23(b) prongs, questions of

23  manageability and judicial economy are irrelevant to 23(b)(2) class actions." *Id.* (cleaned up).

24      The Ninth Circuit has instructed that courts should not impose a "cohesiveness" requirement in

25  assessing whether certification under Rule 23(b)(2) is appropriate. *Senne v. Kan. City Royals*

26  *Baseball Corp.*, 934 F.3d 918, 937–38 (9th Cir. 2019) (quoting Fed. R. Civ. P. 23(b)(2)). "Although

27  common issues must predominate for class certification under Rule 23(b)(3), no such requirement

28  exists under 23(b)(2)." *Id.* at 938 (quotation omitted). Instead, "Rule 23(b)(2) . . . requires only that

United States District Court
Northern District of California

1   'the party opposing the class have acted or refused to act on grounds that apply generally to the

2   class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

3   class as a whole.'" *Id.* at 928 (cleaned up) (quoting Fed. R. Civ. P. 23(b)(2)).

4        The plaintiffs here seek a single injunction or declaratory judgment barring United's continued

5   payment of line-pay value instead of the minimum-guarantee value. They therefore have satisfied

6   the requirement for certifying a case under Rule 26(b)(2). *Rodriguez*, 591 F.3d at 1125–26 ("it is

7   sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or

8   practice that is generally applicable to the class as a whole").

9

10                                      **CONCLUSION**

11       The court certifies the plaintiffs' two proposed classes — California-based pilots and

12  California-based flight attendants – under Rules 23(b)(2) and (3). This disposes of ECF No. 42.

13  **IT IS SO ORDERED.**

14       Dated: February 12, 2021

15                                    _____

16                                    LAUREL BEELER
                                      United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California