Kirk D. Hanson (SBN 167920)
LAW OFFICES OF KIRK D. HANSON
2790 Truxtun Road, Suite 140
San Diego, CA  92106
Tel:  (619) 523-1992
Fax:  (619) 523-9002

Jeffrey C. Jackson (SBN 140990)
LAW OFFICES OF JEFFREY C. JACKSON
2790 Truxtun Road, Suite 140
San Diego, CA  92106
Tel:  (619) 523-9001
Fax:  (619) 523-9002

Attorneys for Plaintiffs Charles E. Ward,
Felicia Vidrio, Paul Bradley,
the Aggrieved Employees,
and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES E. WARD, FELICIA VIDRIO and PAUL BRADLEY, individually, and on behalf of all others similarly situated,<br><br><br><br>Plaintiffs,<br><br><br>vs.<br><br><br><br>UNITED AIRLINES INC., and DOES 1 through 25, inclusive,<br><br><br><br>Defendants. | Case No.: 3:19-cv-03423-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUES OF LIABILITY; AND POINTS & AUTHORITIES**<br><br>Date:        November 18, 2021<br>Time:        9:30 a.m.<br>Location: Phillip Burton Federal Building<br>            450 Golden Gate Ave.,<br>            San Francisco, CA 94102<br>            Courtroom B – 15th Floor<br><br>Magistrate Judge: Hon. Laurel Beeler |

# <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION…………………………………………………...…………………1

I.      INTRODUCTION & SUMMARY OF ARGUMENT ......................................5

II.     PROCEDURAL HISTORY .............................................................................6

III.    THE UNDISPUTED MATERIAL FACTS .....................................................7

        A.     Reserve Pilot Facts …....................…………………….........…....8

        B.     Reserve Flight Attendant Facts…….............…………………..........12

IV.    APPLICABLE LAW......................................................................................17

        A.     Summary Judgment Rules....................................................................17

        B.     The *Oman v. Delta Air Lines* "No-Borrowing" Rule..............................17

V.     UNITED'S VIOLATION OF THE "NO-BORROWING" RULE ENTITLES THE CLASSES AND AGGRIEVED EMPLOYEES TO SUMMARY JUDGMENT ON ISSUES OF LIABILITY AND INJUNCTIVE/DECLARATORY RELIEF.......................................................................................................20

        A.     The Class Claims................................................................20

             First Cause of Action (Quantum Meruit/Quasi Contract).......................20

             Second Cause of Action (Unpaid Minimum Wage)..............................21

             Third Cause of Action (Unpaid Contractual Wages)...............................22

             Fourth Cause of Action (Waiting Time Penalties)...................................22

             Fifth Cause of Action (UCL - Unfair Business Practices)........................23

        B.     The PAGA Claims.................................................................24

             Sixth Cause of Action (PAGA Minimum Wage Violations)...................24

             Seventh Cause of Action (PAGA Unpaid Contractual Wages)...........24

             Eighth Cause of Action (PAGA Waiting Time Violations)....................25

VI.    CONCLUSION.............................................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## Federal Cases

4 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...................................................17

5 *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)...................................................21

6 *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)...................................................17

7 *Heyer v. Morris Okun, Inc.*, 2003 WL 21991583 (S.D. N.Y. 2003)...................................21

8 *In re De Laurentiis Entertainment Group Inc.*, 963 F.2d 1269 (9th Cir. 1992).........................20, 21

9 *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099 (9th Cir. 2000).................................17

10 *Summers v. Teichert & Son, Inc.,* 127 F.3d 1150 (9th Cir. 1997)......................................17

11 *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)...................................................17

12

## California Cases

13 *Cortez v. Purolator Air Filtration Products Company*, 23 Cal.4th 163 (2000)..............................23

14 *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36 (2013).................................19

15 *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (2020)...................................................*passim*

16 *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221 (2014)..................................21

17 *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal.App.4th 1093 (1996)..............................23

18 *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98 (2017)..................................19

19 *Wilson v. La Jolla Group*, 61 Cal.App.5th 897 (2021)...................................................5

20

## California Rules

21 Bus. & Prof. Code § 17200...................................................3, 23

22 Bus. & Prof. Code § 17293...................................................23

23 Lab. Code § 201...................................................2, 4, 22, 23, 25

24 Lab. Code § 202...................................................2, 4, 22, 23, 25

25 Lab. Code § 221...................................................1, 4, 22, 24, 25

26 Lab. Code § 222...................................................1, 4, 18, 19, 22, 24, 25

27 Lab. Code § 1182.12...................................................1, 3, 21, 22, 24

28 Lab. Code § 1194...................................................1, 3, 21, 22, 24

Lab. Code § 1194.2.................................................................................................1, 3

Lab. Code § 1197.................................................................................1, 3, 21, 22, 24

Lab. Code § 2698......................................................................................................24

Lab. Code § 2699(a)................................................................................................24

Lab. Code § 2699.5..................................................................................................24

IWC Wage Order No. 9 § 4(B)...........................................................1, 3, 21, 22

**Federal Rules**

Federal Rule of Civil Procedure
    Rule 23(b)(2) ...............................................................................3, 23

    Rule 56(a) ......................................................................................1, 17

1

## NOTICE OF MOTION

TO DEFENDANT UNITED AIRLINES, INC. AND ITS ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED THAT on November 18, 2021, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom B – 15th Floor, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs, the Class Members, and the Aggrieved Employees will seek, pursuant to F.R.C.P. Rule 56(a), summary judgment on issues of liability and injunctive/declaratory relief with respect to Plaintiffs' Second Amended Complaint as follows:

1.    **First Cause of Action** (Quantum Meruit/Quasi-Contract) – Plaintiffs and the Class Members seek summary judgment on the issue of Defendant's liability under quantum meruit/quasi-contract based upon Defendant's violation of the "no-borrowing" rule set forth in *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs contend that United violates the no-borrowing rule of *Oman v. Delta Air Lines* during any pay period in which it pays its on-call Reserve pilots and flight attendants a leading pay value that is flight time, and not minimum pay guarantee, because, in this scenario, United either illegally borrows wages promised for the flight time period to compensate for the on-call Reserve time period, or does not pay the pilots and flight attendants at all for their Reserve time. *Oman* at p. 782;

2.    **Second Cause of Action** (Unpaid Minimum Wage) – Plaintiffs and the Class Members seek summary judgment on the issue of Defendant's liability under Labor Code §§ 1182.12, 1194, 1194.2, 1197, and IWC Wage Order No.9, §4(B), for unpaid minimum wage based upon Defendant's violation of the "no-borrowing" rule set forth in *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs contend that United violates the no-borrowing rule of *Oman v. Delta Air Lines* during any pay period in which it pays its on-call Reserve pilots and flight attendants a leading pay value

1

that is flight time, and not minimum pay guarantee, because, in this scenario, United either illegally borrows wages promised for the flight time period to compensate for the on-call Reserve time period, or does not pay the pilots and flight attendants at all for their Reserve time, and if the pilots and flight attendants are not paid at all for their Reserve time under this policy, then they are not being paid even minimum wage for Reserve time. *Oman* at p. 782;

3. **Third Cause of Action** (Unpaid Contractual Wages) – Plaintiffs and the Class Members seek summary judgment on the issue of Defendant's liability under Labor Code §§ 221 and 222 based upon Defendant's violation of the "no-borrowing" rule set forth in *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs contend that United violates the no-borrowing rule of *Oman v. Delta Air Lines* during any pay period in which it pays its on-call Reserve pilots and flight attendants a leading pay value that is flight time, and not minimum pay guarantee, because, in this scenario, United either illegally borrows/reduces wages promised under contract for the flight time period to compensate for the on-call Reserve time period, or does not pay the pilots and flight attendants at all for their Reserve time. *Oman* at p. 782;

4. **Fourth Cause of Action** (Failure to Pay All Wages Owed at Resignation or Termination) – Plaintiffs and the Class Members seek summary judgment on the issue of Defendant's liability under Labor Code §§ 201 and 202 based upon Defendant's violation of the "no-borrowing" rule set forth in *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs contend that United violates the no-borrowing rule of *Oman v. Delta Air Lines* during any pay period in which it pays its on-call Reserve pilots and flight attendants a leading pay value that is flight time, and not minimum pay guarantee, because, in this scenario, United either illegally borrows wages promised for the flight time period to compensate for the on-call Reserve time period, or

does not pay the pilots and flight attendants at all for their Reserve time (*Oman* at p. 782), and thus, these unpaid wages are not paid at the time the pilots and flight attendants resign or are terminated;

5. **Fifth Cause of Action** (Unfair Business Practices/Injunctive & Declaratory Relief) – Pursuant to Business & Professions Code § 17200 et seq. and FRCP Rule 23(b)(2), Plaintiffs and the Class Members seek summary judgment in the form of injunctive and declaratory relief, as follows: (1) an order enjoining Defendant's continued violation of the *Oman v. Delta Air Lines* no-borrowing rule when Defendant pays Reserve pilots and flight attendants the pay value of flight time instead of the pay value of minimum pay guarantee; and (2) a declaration that Defendant violates the *Oman v. Delta Air Lines* no-borrowing rule when Defendant pays Reserve pilots and flight attendants the pay value of flight time instead of the pay value of minimum pay guarantee;

6. **Sixth Cause of Action** (PAGA Minimum Wage Violations) – Plaintiffs, on behalf of the State of California and Aggrieved Employees, seek summary judgment on the issue of Defendant's liability under the Labor Code Private Attorney General Act ("PAGA"), based upon Defendant's violations of the minimum wage rules set forth in Labor Code §§ 1182.12, 1194, 1194.2, 1197, and IWC Wage Order No.9, §4(B), which violations stem from Defendant's violation of the "no-borrowing" rule set forth in *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs contend that United violates the no-borrowing rule of *Oman v. Delta Air Lines* during any pay period in which it pays its on-call Reserve pilots and flight attendants a leading pay value that is flight time, and not minimum pay guarantee, because, in this scenario, United either illegally borrows wages promised for the flight time period to compensate for the on-call Reserve time period, or does not pay the pilots and flight attendants at all for their Reserve time, and thus, if the pilots and flight attendants are not paid at all for their Reserve

1   time under this policy, then they are not being paid even minimum wage for

2   Reserve time. *Oman* at p. 782;

3   **7.**   **Seventh Cause of Action** (PAGA Contractual Wage Violations) – Plaintiffs,

4   on behalf of the State of California and Aggrieved Employees, seek

5   summary judgment on the issue of Defendant's liability under PAGA based

6   upon Defendant's violations of Labor Code §§ 221 and 222, which violations

7   stem from Defendant's violation of the "no-borrowing" rule set forth in

8   *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs

9   contend that United violates the no-borrowing rule of *Oman v. Delta Air*

10  *Lines* during any pay period in which it pays its on-call Reserve pilots and

11  flight attendants a leading pay value that is flight time, and not minimum pay

12  guarantee, because, in this scenario, United either illegally borrows/reduces

13  contractual wages promised for the flight time period to compensate for the

14  on-call Reserve time period, or does not pay the pilots and flight attendants

15  at all for their Reserve time. *Oman* at p. 782; and

16  **8.**   **Eighth Cause of Action** (PAGA Waiting Time Violations) – Plaintiffs, on

17  behalf of the State of California and Aggrieved Employees, seek summary

18  judgment on the issue of Defendant's liability under PAGA based upon

19  Defendant's violations of Labor Code §§ 201 and 202, which violations stem

20  from Defendant's violation of the "no-borrowing" rule set forth in *Oman v.*

21  *Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), to wit, Plaintiffs contend

22  that United violates the no-borrowing rule of *Oman v. Delta Air Lines* during

23  any pay period in which it pays its on-call Reserve pilots and flight attendants

24  a leading pay value that is flight time, and not minimum pay guarantee,

25  because, in this scenario, United either illegally borrows wages promised for

26  the flight time period to compensate for the on-call Reserve time period, or

27  does not pay the pilots and flight attendants at all for their Reserve time

28  (*Oman* at p. 782), and thus, these unpaid wages are not paid at the time the

    pilots and flight attendants resign or are terminated.

This Motion is based upon this Notice, the Memorandum of Points and Authorities in support thereof, the accompanying Declarations, the various exhibits attached thereto, the Proposed Order, the files and records of the Court, and on such oral and documentary evidence as may be presented at the hearing on this Motion.

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

This case involves the "no-borrowing" rule recently explained by the California Supreme Court in *Oman v. Delta Air Lines, Inc.*, 9 Cal.5th 762 (June 29, 2020), as applied to United's pilots and flight attendants who are designated as on-call "Reserve" during any pay period.

The *Oman v. Delta Air Lines* decision summarizes the no-borrowing rule as follows:

> "[I]f a contract or bargaining agreement expressly guarantees compensation for one set of tasks or one specified period, that compensation may not be reduced to supplement pay for other tasks or periods within the purview of the contract or bargaining agreement, but otherwise undercompensated by them."

*Id.* at p. 782.

Thus, *Oman* holds that wages designated by a contract to pay for one time period or set of tasks may not be used to compensate for other time periods or tasks. *Id.* at pp. 779-783. Stated another way, "the [no-borrowing] rule is ... against borrowing compensation paid for one category of work and applying it to a different category..." *Wilson v. La Jolla Group,* 61 Cal.App.5th 897, 918 (2021).

On-call Reserve status involves two distinct periods or categories of work: (1) the time pilots and flight attendants spend away from their home-base airport waiting for phone notice of a flight assignment (e.g., on-call time); and (2) the time pilots and flight attendants spend on the ground at their home-base airport preparing for flights, the time they spend in the air flying, and the time back on the ground after finishing flights (e.g., flight-related time). The agreements between United and its pilots and flight attendants have separate pay provisions for on-call Reserve time and flight-related time. The pay

provision known as minimum pay guarantee ("MPG") is the only pay provision that compensates pilots and flight attendants for their on-call Reserve time. At the end of each monthly pay period, the pilots and flight attendants are paid the greater pay value between MPG and flight-related time, meaning if they are paid for flight-related time, they are not paid MPG.

United violates the no-borrowing rule of *Oman v. Delta Air Lines* during any pay period in which it pays its on-call Reserve pilots and flight attendants the leading pay value of flight-related time, and not MPG, because, in this scenario, United either illegally borrows wages promised for the flight-related time period to compensate for the on-call Reserve time period, or does not pay the pilots and flight attendants at all for their Reserve time. *Oman* at p. 782.

Finally, Plaintiffs note that in this Motion they are not seeking recovery of unpaid wages either as damages or as restitution, nor are Plaintiffs seeking PAGA civil penalties in this Motion. Plaintiffs are only seeking summary judgment on issues of United's liability on the claims alleged in the Second Amended Complaint and injunctive and declaratory relief to stop the violations. Damages in the form of unpaid wages, restitution of unpaid wages, and PAGA civil penalties will be sought in specific amounts according to proof at trial. Plaintiffs are deferring the adjudication of the amount of damages, restitution, and PAGA civil penalties to the time of trial because United's violations are ongoing, and thus, the damages and civil penalties continue to add up.

## II.   PROCEDURAL HISTORY

Plaintiffs filed this action in the Superior Court of the State of California, County of San Francisco (Case No. CGC-19-575737) on April 26, 2019. On July 8, 2019, United removed this action to the Federal District Court, Northern District of California, [Document 1]. Thereafter, pursuant to stipulation of the Parties and order of this Court, Plaintiffs filed their Second Amended Complaint on October 2, 2020 in response to the recent decision from the California Supreme Court in *Oman v. Delta Air Lines, Inc.*, 9

Cal.5[th] 762 (June 29, 2020). [Document 35]. The Second Amended Complaint alleges both class action claims under Rule 23 and representative action claims under The California Labor Code Private Attorney's General Act of 2004 ("PAGA") stemming from United's underlying violation of the *Oman* "no-borrowing" rule as applied to United's on-call Reserve time policies.

This Court granted Plaintiffs' Motion for Class Certification on February 12, 2021, and certified the classes for pilots and flight attendants requested by Plaintiffs. [Document 50] On May 4, 2021, Class Notice was mailed out by the Notice Administrator (Simpluris) to 6,773 putative class members, and after the forty-five (45) day Opt-Out deadline of June 18, 2021 had expired, Simpluris had received 58 valid Opt-Outs. Thus, the class consists of 6,715 Class Members. This number includes both pilots and flight attendants.

### III.   THE UNDISPUTED MATERIAL FACTS

The facts recited below concerning United's payroll policy for flight crew on reserve status are taken directly from Plaintiffs' Motion for Class Certification. As previously noted by this Court in ruling on that Motion, "The parties agree on the facts about United's payroll policy for flight crew on reserve status, meaning, on-call crew (as opposed to those with a known schedule)."  (Document 50, Cert. Order, pg. 2, lns. 13-14) There is one factual clarification noted by Defendant, and accepted by Plaintiffs, that is, the pay value for pilots known as "Protected Time Credit" does not come into play here because it does not apply when pilots are on Reserve status. (See Document 45, United Opp. to Class Cert., pg. 4, fn. 4). Thus, the dispute here is a purely legal dispute based upon undisputed material facts (e.g., the facts of United's payroll policy for flight crew on reserve status). (See Document 42, Plaintiffs' statement of facts re Class Cert., pg. 8, ln. 1 – pg. 17, ln. 12; Document 45, United's

statement of facts in Opp. to Class Cert., pg. 2, ln. 7 – pg. 8, ln. 1).

A.   **Reserve Pilot Facts**

The following facts are taken primarily from the deposition of Paul Carlson, United's Rule 30(b)(6) witness on pilot procedures and policies. (Carlson Depo. 8/5-12/15-17; 15/6-24, attached as Exhibit 1 to Hanson Decl.).

Every monthly pay period, also known as a "bid period," a pilot is either on "lineholder" or "reserve" status. (Carlson Depo. 49/10-13, Ex. 1 to Hanson Decl.; Ward Decl. ¶ 3). The Pilot Pay Register, which is a real-time timekeeping document, shows the pilot's classification for each bid period as either "RSV" (reserve) or "L" (lineholder). (Carlson Depo. 89/18-90/4, Ex. 1 to Hanson Decl.; Ward Decl. ¶ 11 and Exhibits 1 – 5 to Ward Decl.). A lineholder has a series of scheduled trips during the bid period, and thus, knows what days he or she is going to work in the month and has pre-assigned trips (e.g., the pilot is not "on-call"). (Carlson Depo. 49/14-17, Ex. 1 to Hanson Decl.; Ward Decl. ¶ 10). By contrast, a reserve pilot has 18 reserve days in the month, but does not know if he or she will be assigned an actual flight on any of the 18 reserve days. (Carlson Depo. 49/18-50/21, Ex. 1 to Hanson Decl.; Ward Decl. ¶ 10). Within the 18 reserve days in the month, a pilot can only be on "reserve" status for blocks of 3 to 6 days at a time, and must have 2 days off in between the blocks. (Carlson Depo. 50/22-51/22, Ex. 1 to Hanson Decl.; Ward Decl. ¶ 10).

The reserve pilot starts off on "**long call reserve**" in the bid period, which requires United to give the pilot 13-hours notice prior to flight departure. (Carlson Depo. 52/13-53/11; 56/1-17, Ex. 1 to Hanson Decl.). The pilot is "on-call" during the entire 24 hours of the long call reserve day and must always be ready to answer the phone to receive a flight assignment and report for duty at his or her home-base airport. (Carlson Depo. 53/13-54/11, Ex. 1 to Hanson Decl.). While on long call reserve, the pilot must not consume alcohol, and must be able to report to his or her home-base airport within the 13-hour notice. (Carlson Depo. 57/21-58/13, Ex. 1 to

Hanson Decl.; Ward Decl. ¶ 10). Pilots are paid for every long call reserve day for the time they are on-call *waiting for an assignment* by a contribution of 4 hours, 3 minutes, and 20 seconds to the pilot's minimum pay guarantee ("MPG") for each day the pilot is on-call on reserve. This is the only pay provision that compensates pilots for their long call reserve days. (Carlson Depo. 59/19-23, Ex. 1 to Hanson Decl.).

United, at its discretion, may switch a pilot from long call reserve status to "**short call reserve**" status, with 10 to 12 hours of notice of the change, which then requires the pilot to report to work upon 2-and-a-half-hour phone notice instead of 13-hour phone notice. (Carlson Depo. 59/24-64/10, Ex. 1 to Hanson Decl.). The same restrictions apply for short call status, that is, the pilot may not consume alcohol and must always be available by phone to receive a flight assignment. (Carlson Depo. 68/22-71/4, Ex. 1 to Hanson Decl.). The compensation for short call reserve status is the same as long call reserve status (e.g., 4 hours, 3 minutes, and 20 seconds contributed to the pilot's MPG for the bid period), but short call status only lasts for 14 hours, and if no flight assignment is given, the pilot reverts back to long call status. (Carlson Depo. 71/5-72/9, Ex. 1 to Hanson Decl.).

"**Field Standby**" reserve status is when the pilot reports to his or her home-base airport in uniform and waits for up to 4 hours at the airport for a flight assignment. If no assignment is given after 4 hours, the pilot's status reverts back to long call reserve status. Field standby status is paid the same way as long call and short call status, that is, 4 hours, 3 minutes, and 20 seconds are contributed to the pilot's MPG in the bid period for each field standby day. (Carlson Depo. 74/14-78/12, Ex. 1 to Hanson Decl.).

In summary, every day a pilot is on Long Call, Short Call, or Field Standby reserve status (which together is 18 days in the bid period), the pilot is entitled to compensation for each reserve day (e.g., on-call time) in the bid period by a contribution of 4 hours, 3 minutes, and 20 seconds to the pilot's MPG pay. (Carlson Depo. 58/14-59/18; 71/5-14; 74/14-78/12, Ex. 1 to Hanson Decl.; see also United Pilot

Agreement 2018, pp. 476-477, Ex. 2 to Hanson Decl.). **MPG is the only pay provision under which the pilots are paid for reserve days** (e.g., Long Call, Short Call, or Field Standby). (Carlson Depo. 58/14-59/23, Ex. 1 to Hanson Decl.).

At the end of each bid period, the payroll system calculates the pilots' wages under the two competing pay formulas of MPG and Line Value, and pays the pilots under the pay formula that results in the highest pay amount. (Carlson Depo. 143/5-20; 145/5-12, Ex. 1 to Hanson Decl.; Ward Decl. ¶ 12). Thus, MPG only gets paid (which includes pay for the reserve on-call days) if it is the leading pay value at the end of the bid period. (Carlson Depo. 78/13-79/12, Ex. 1 to Hanson Decl.).

Line Value pay covers pay for *trips* and training. (Carlson Depo. 139/11-143/4, Ex. 1 to Hanson Decl.). Line Value pay is calculated for each trip during the bid period under four different pay scenarios, and pays the leading value of the four pay scenarios for each trip (e.g., the pay scenario that provides the greatest amount of pay), and then totals the leading pay values for each trip during the bid period to come up with the total Line Value pay for the bid period. (Carlson Depo. 139/11-143/8, Ex. 1 to Hanson Decl.). The four pay scenarios are: (1) **Trip Rig** (pilot gets paid for the entire trip footprint from report time to release time of trip) (Carlson Depo. 132/13-133/22); (2) **Duty Time** (pilot is paid for all time he is on duty from report time to release time) (Carlson Depo. 133/24-134/7); (3) **Calendar Day** (pilot will be paid 5 hours for every calendar day that he is *away from base* on a trip (Carlson Depo. 134/8-14; 141/2-23); and (4) **Block Time** (pilot is paid the greater of the scheduled or actual flight time. (Carlson Depo. 134/15-24). All four of the pay scenarios under Line Value pay relate to trips or flying time. Conversely, none of the four Line Value pay scenarios relate to reserve days when the pilot is on-call waiting for a trip assignment.

The Line Value pay scenario does not compensate the pilots for reserve days because this pay scenario *solely* relate to *trips*, and training. Again, "trips" are measured from the report time at the pilot's home-base airport before the first departure to the release time after the final Arrival at the Pilot's home-base airport.

MPG is the only pay scenario that compensates pilots for reserve days. Thus, at the end of a reserve pilot's bid period, the pilot is only paid for those 18 reserve days if the lead pay value at the end of the bid period is MPG. Conversely, if the reserve pilot's lead pay value at the end of the bid period is Line Pay, then the pilot either receives ***no pay*** for his or her reserve days (e.g., does not get the 4 hours, 3 minutes, and 20 seconds of pay for each of the 18 reserve days) or a portion of the compensation promised for Line Pay is being borrowed to pay for the reserve days.

A review of Plaintiff Charles Ward's pay records illustrates how the competing pay scenarios are applied to reserve pilots at the end of the bid period. For example, in bid period April 1, 2015 to April 30, 2015, Mr. Ward's Line Value pay was calculated at $19,262.43, based upon 92 hours and 34 minutes, and his MPG pay was calculated at $15,188.38, based upon 73 hours. Thus, Mr. Ward was paid Line Value pay (relating to flight time) because it exceeded MPG, meaning that he either went unpaid for his reserve time or time was borrowed from his Line Value pay to cover reserve time. (Ward Decl. ¶ 13, and Exhibit 1 thereto).

In bid period May 31, 2015 to June 29, 2015, Mr. Ward's Line Value pay was calculated at $16,114.40, based upon 77 hours and 25 minutes, and his MPG pay was calculated at $16,478.35, based upon 79 hours and 12 minutes. Thus, Mr. Ward was paid the MPG pay value because it exceeded the Line Value pay, meaning that he was paid for his reserve time in this bid period. (Ward Decl. ¶ 13, and Exhibit 2 thereto).

In bid period June 30, 2015 to July 29, 2015, Mr. Ward's Line Value pay was calculated at $19,516.08, based upon 93 hours and 14 minutes, and his MPG pay was calculated at $15,188.38, based upon 73 hours. Thus, Mr. Ward was paid Line Value pay (relating to flight time) because it exceeded MPG, meaning that he either went unpaid for his reserve time or time was borrowed from his Line Value pay to cover reserve time. (Ward Decl. ¶ 13, and Exhibit 3 thereto).

In bid period July 30, 2015 to August 28, 2015, Mr. Ward's Line Value pay was calculated at $12,245.00, based upon 58 hours and 39 minutes, and his MPG pay was

calculated at $15,188.38, based upon 73 hours. Thus, Mr. Ward was paid the MPG pay value because it exceeded the Line Value pay, meaning that he was paid for his reserve time in this bid period. (Ward Decl. ¶ 13, and Exhibit 4 thereto).

Finally, this pay scheme for Reserve pilots is not unique to Plaintiff Charles Ward. The following numbers are taken from United's discovery responses and show the number of Reserve pilots employed by United who were home-based in California, and who were paid a leading pay value at the end of their reserve bid period that *was not* MPG, meaning that they either went unpaid for their reserve time or wages were borrowed from Line Value pay to compensate for reserve time: **351** pilots in 2015; **352** pilots in 2016; **267** pilots in 2017; **292** pilots in 2018; **304** pilots in 2019; and **349** pilots, to date, in 2020. (See United's Responses to Plaintiffs' First Set of Interrogatories, Nos. 1- 4, attached as Exhibit 3 to Hanson Decl.).

As demonstrated above, United violates the no-borrowing rule set forth in *Oman v. Delta Air Lines* with respect to its pilots on Reserve status because United borrows wages from flight-related time periods to compensate for on-call Reserve time periods. These two time periods are distinct in both time, tasks, and location. Thus, when United borrows wages from the flight-related period to compensate for the on-call Reserve period, it violates the no-borrowing rule set forth in *Oman v. Delta Air Lines*.

## B.     Reserve Flight Attendant Facts

The following facts concerning United's policies and procedures for flight attendants are taken primarily from the testimony of United's Rule 30(b)(6) witness, Robert T. Krabbe. (Krabbe Depo. 6/4-9/15, attached as Exhibit 4 to Hanson Decl.).

During each bid period, flight attendants are either designated by United as "Lineholders" or "Reserve." (Krabbe Depo. 71/17-74/18, Ex. 4 to Hanson Decl.). Twelve days are subtracted from each bid period, and the days remaining are designated as "reserve days." (Krabbe Depo. 74/6-18, Ex. 4 to Hanson Decl.). A flight attendant can be on reserve for up to 6 days, but is usually on reserve for blocks of 3 to 6 days at a time. (Krabbe Depo.75/11-16, Ex. 4 to Hanson Decl.). During on-call

reserve time periods, flight attendants must respond immediately when United contacts them by phone for a flight assignment, including donning the company uniform and traveling to their home-base airport. Accordingly, during the on-call reserve time period, the flight attendants are limited with respect to (1) how far they can travel away from their residence and (2) the kinds of activities they can engage in. Flight attendants must refrain from consuming any alcohol during the time period when they are on-call in reserve status. (Krabbe Depo. 82/18 - 83/20, Ex. 4 to Hanson Decl.).

When on reserve, the flight attendant is compensated for the on-call reserve time by way of the 78-hour Minimum Pay Guarantee (MPG). (Krabbe Depo. 76/1-78/17, Ex. 4 to Hanson Decl.). When explaining how the MPG pay provision compensates flight attendants for their on-call reserve time, Robert T. Krabbe testified as follows:

Q.    And when the flight attendants are on reserve status, they're in a period where there's either four consecutive days, could be up to six, could be seven sometimes. Is there any compensation for that time period, assuming they haven't been called in to actually show up for a flight? If they're just waiting around to be called, is there compensation for that of any kind?

A.    So they receive - - there's a 78-hour guarantee per month. That's their guarantee for the month…

Q.    So I think you were explaining the compensation . . . So how does that minimum pay guarantee relate to the reserve status?

A.    So it's - - 78-hour is the minimum for the month for the reserves. Then they are - - throughout the month they're either assigned to a trip, they're released, or they're on call. And so you are assigned to things, as you fly trips, the credit is going against the 78 hours. And at the end of the month it's going to compare what you actually flew versus the 78 hours, and it's going to pay you the greater of the two.

(Krabbe Depo. 76/1-77/14, Ex. 4 to Hanson Decl.).

The compensation for Reserve flight attendants is also confirmed by the Flight

Attendant Agreement, which states in relevant part: "Reserves shall be guaranteed seventy-eight (78) hours pay and credit per month…" (See 2016 – 2021 Flight Attendant Agreement, p. 34 (UNITED000037), Ex. 5 to Hanson Decl.).

The problem with this pay scheme for Reserve flight attendants is that if the flight attendant is paid for flying time at the end of the bid period because flying time is the lead pay value when compared to MPG, then the flight attendant is either not being paid any compensation for the on-call reserve time or wages are being borrowed from flight time to compensate for the on-call reserve time. This is confirmed when the calculation for flying time is broken down into its four (4) pay formulas, none of which relate in any way to on-call reserve time.

Flight-related time for flight attendants is measured by "On Duty/Duty Time," which is defined as the time period between when the flight attendant reports to his or her home-base airport for a flight and when the flight attendant is released from duty after arrival back at his or her home-base airport after completing a flight or a series of flights. (See 2016 – 2021 Flight Attendant Agreement, p. 8 (UNITED000011), Ex. 5 to Hanson Decl.).

Flight-related time is calculated under four different competing pay formulas, and the flight attendant is paid for *each trip* under the formula that provides the highest pay value for that trip. Then, at the end of the bid period, the pay values for each trip are added together to come up with the total flight time pay value for the bid period. The four flight pay formulas are: (1) **Duty Period Rig** (measured from report time for the trip at the home-base airport to release from duty at home-base airport) (Krabbe Depo. 24/10-14; 30/23-31/1; 43/13-16, Ex. 4 to Hanson Decl.); (2) **Block Time** (measured by the greater of the actual or scheduled flight time) (Krabbe Depo. 24/17-23; 25/3-17; 30/2-22; 44/1-6, Ex. 4 to Hanson Decl.); (3) **5 Hour Average Rig** (pays 5 hours for each trip at the 4A hourly rate) (Krabbe Depo. 25/18-26/3; 31/2-7; 43/19-20, Ex. 4 to Hanson Decl.); and (4) **Trip Rig** (measured from report time at the home-base airport to release time at the home-base airport) (Krabbe Depo. 26/15-27/7;

31/14-23, Ex. 4 to Hanson Decl.). Importantly, all four of these pay formulas relate specifically to the trip. (Krabbe Depo. 24/2-9, Ex. 4 to Hanson Decl.). Thus, none of these pay formulas relate to on-call reserve time.

A review of Plaintiff Felicia Vidrio's pay records for the bid period of November of 2019 illustrate how reserve flight attendants are paid at the end of the bid period, or more to the point, illustrate how flight attendants are shortchanged for reserve time when the leading pay value at the end of the bid period is based upon flight time, not MPG.

Ms. Vidrio's wage statement and corresponding Pay Register for the bid period of November of 2019 (e.g., 10/30/2019 to 11/29/2019) are collectively attached to her Declaration as Exhibit 1. The first page of the Pay Register shows in the "General Information" box a "RSV" designation, meaning that Ms. Vidrio was on Reserve status during this bid period. (Vidrio Decl. ₱ 6).

The Pay Register also shows that Ms. Vidrio was paid the leading pay value of *flight time* in this bid period based on 65 hours and 32 minutes of credited flight time. In other words, she was not paid the pay value of MPG during this bid period. This is shown two different ways on the Pay Register. First, when all the credited flight time hours and minutes are added together, they total 65 hours and 32 minutes, which is the value listed in the box on the first page of the Pay Register labeled "Minimum," with a corresponding pay value of $4,311.44. The hours and minutes used for this credited flight time calculation appear in the boxes on the Pay Register after the line items labeled "Credit." (Vidrio Decl. ₱ 8, and Exhibit 1 thereto).

Second, another way to determine from the flight attendant Pay Register whether Ms. Vidrio was paid a leading pay value of flight time or MPG, is to look at the last page of the Pay Register at the last entry labeled "Reserve Override." (See pg. 3 of Pay Register in Exhibit 1 to Vidrio Decl.) Per the contract between United and the flight attendants, flight attendants on Reserve status during a bid period are paid additional compensation of $2.00 *for each credited flight hour*. (Vidrio Decl. ₱ 8; see

also 2016 – 2021 Flight Attendant Agreement, p. 34 (UNITED000037), Ex. 5 to Hanson Decl.). Thus, the "Reserve Override" line item on the last page of Ms. Vidrio's November 2019 Pay Register relates solely to flight time and shows that she was credited with 65 hours and 32 minutes of ***flight time*** for this bid period, which also confirms that the 65 hours and 32 minutes listed in the "Minimum" box on the first page of her Pay Register relates to ***flight time***, not MPG. (Vidrio Decl. ⁋ 8 and Exhibit 1 thereto).

Thus, ***flight time*** was the leading pay value used during this bid period to compensate Ms. Vidrio while she was on reserve status. (Vidrio Decl. ⁋ 8). Accordingly, during this reserve bid period, Ms. Vidrio was paid based upon flight time because it exceeded the MPG pay value, meaning that she either went unpaid for her reserve time or wages were borrowed from her flight time pay to compensate her for reserve time. (Vidrio Decl. ⁋ 8, and Exhibit 1 thereto).

Finally, the Reserve flight attendant pay scheme illustrated above for Ms. Vidrio is not unique to her. The following numbers are taken from United's discovery responses and show the number of Reserve flight attendants employed by United who were home-based in California, and who were paid a leading pay value at the end of their reserve bid period that *was not* MPG, meaning that they either went unpaid for their reserve time or wages were borrowed from flight time to cover their reserve time: **545** flight attendants in 2015; **405** flight attendants in 2016; **426** flight attendants in 2017; **962** flight attendants in 2018; **1148** flight attendants in 2019; and **512** flight attendants, to date, in 2020. (See United's Responses to Plaintiffs' First Set of Interrogatories, Nos. 5 - 8, Ex. 3 to Hanson Decl.).

As demonstrated above, United violates the no-borrowing rule set forth in *Oman v. Delta Air Lines* with respect to its Reserve flight attendants because United borrows wages from flight-related time periods to compensate for on-call Reserve time periods. These two time periods are distinct in both time, tasks, and location. Thus, when United borrows wages from the flight-related period to compensate for the on-call

Reserve period, it violates the no-borrowing rule set forth in *Oman v. Delta Air Lines*.

**IV.   APPLICABLE LAW**

**A.   <u>Summary Judgment Rules</u>**

Rule 56 of the Federal Rules of Civil Procedure states in relevant part:

> A party may move for summary judgment, identifying each claim or defense - - or the part of each claim or defense - - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Under Rule 56, a district court may grant summary judgment on the issue of liability only. *White v. Lee*, 227 F.3d 1214, 1240 (9th Cir. 2000). A "genuine" dispute of material fact only exists if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence . . ." *Summers v. Teichert & Son, Inc.,* 127 F.3d 1150, 1152 (9th Cir. 1997).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

**B.   <u>The *Oman v. Delta Air Lines* "No-Borrowing" Rule</u>**

United's violation of the "no-borrowing" rule, as recently explained by the California Supreme Court in *Oman v. Delta Air Lines*, is the common violation that triggers the violations of the other California labor laws, as alleged by Plaintiffs in all Causes of Action in the Second Amended Complaint.

In *Oman v. Delta Air Lines*, the California Supreme Court answered certified questions from the Ninth Circuit Court of Appeal, one of which addressed the prohibited practice known as "wage borrowing." The plaintiffs contended wage

borrowing was an illegal part of Delta's flight attendant pay scheme. Before addressing plaintiffs' claims, the Court first reviewed the history of the prohibition against wage borrowing and explained it several different ways.

The Court first summarized the consensus under California law concerning wage borrowing as follows:

> The Division of Labor Standards Enforcement (DLSE) and the unanimous Courts of Appeal, however, have embraced a more stringent understanding of state law that forbids taking compensation contractually due for one set of hours and spreading it over other, otherwise un- or undercompensated, hours to satisfy the minimum wage---a practice that has often, perhaps misleadingly, been referred to as "wage averaging.' As we will explain, the practice these authorities prohibit might be more accurately characterized as 'wage borrowing,' and we employ that phraseology here."

*Id*. at p. 779.

Labor Code section 222 states that, "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully…to withhold from said employee any part of the wage agreed upon…" Wage borrowing violates Section 222 "by reducing compensation, for the hours from which wages were borrowed, below the contractually agreed-upon level." *Id*. at p. 780.

*Oman v. Delta* further states:

> Although we have not previously had occasion to address the issue, we agree with this consensus: State law prohibits borrowing compensation contractually owed for one set of hours or tasks to rectify compensation below the minimum wage for a second set of hours or tasks, regardless of whether the average of paid and unpaid (or underpaid) time exceeds the minimum wage. Even if that practice nominally might be thought to satisfy the requirement to pay at least minimum wage for each hour worked, it does so only at the expense of reneging on the employer's contractual commitments, in violation of the contract protection provisions of the Labor Code.

*Id*. at p. 781.

Finally, the Court in *Oman* sums up the no-borrowing rule as follows:

> "[I]f a contract or bargaining agreement expressly guarantees compensation
> for one set of tasks or one specified period, that compensation may not be
> reduced to supplement pay for other tasks or periods within the purview of
> the contract or bargaining agreement, but otherwise undercompensated by
> them."

*Id*. at p. 782.

It is important to point out that the no-borrowing rule only operates within the context of contractual agreements for wages, and thus, the Labor Code sections governing such contracts (e.g., Lab. C. § 222) only prohibit wage borrowing when it results in the failure to maintain the wage scale designated by contract. *Id*. at pp. 783. In other words, when evaluating a wage borrowing claim, the court does not adjudicate whether the contracted compensation scheme (e.g., by the hour, the task, the sale, the piece, or by any other standard) qualifies as compensable time or tasks under the Labor Code or Wage Orders, because the parties have already agreed by contract that it does. *Id*. at pp. 781, 783; see *Vaquero v. Stoneledge Furniture, LLC*, 9 Cal.App.5th 98, 114-117 (2017) [the no-borrowing rule prohibited the employer from using wages promised for *commissions* to fulfill its obligation to pay for rest breaks]; *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36, 50 (2013) [the no-borrowing rule prohibited the employer from using pay promised for *piece rate repair tasks* to cover the time mechanics were waiting to be assigned repair tasks].

In *Oman v. Delta*, the sole work period at issue was the "Rotation," which work period, under Delta's policy, begins when the flight attendant reports for duty at the airport prior to flight departure, continues with the actual flying time, and ends when the flight attendant completes his or her post-flight duties after arrival at the gate. *Id*. at p. 783. In other words, the Rotation time period at issue in *Oman* solely relates to flight-related duties. The Rotation period has four competing pay formulas that operate within that time period, and Delta pays the flight attendants under the formula with the highest pay value for each Rotation. The Court in *Oman* held that Delta's policy did not violate

the no-borrowing rule because all four pay formulas applied to the *same time period and tasks* (e.g., flight-related duties), and thus, there was no borrowing of wages earned in the Rotation period to compensate for different tasks performed in different time periods. *Id.* at pp. 786, 788.

By contrast, in this case, there are two distinct work periods at issue: (1) the flight-related work period, which like the Rotation work period in *Oman v. Delta*, is also measured by the time between when pilots and flight attendants report for duty at the airport and when they are released from duty at the airport after arrival and completion of post-flight duties; and (2) the on-call Reserve work period, which occurs away from the pilot's and flight attendant's home-base airport, and during which time United's pilots and flight attendants are on-call waiting for phone notice of a flight assignment. Thus, unlike *Oman*, United's policy *does violate* the no-borrowing rule because, as the undisputed facts show, United borrows wages from the flight-related period to compensate flight crew for the on-call Reserve period when the highest pay value for the bid period is Line Value pay instead of MPG.

### V. UNITED'S VIOLATION OF THE "NO-BORROWING" RULE ENTITLES THE CLASSES AND AGGRIEVED EMPLOYEES TO SUMMARY JUDGMENT ON ISSUES OF LIABILITY AND INJUNCTIVE/DECLARATORY RELIEF

#### A. The Class Claims

##### First Cause of Action (Quantum Meruit/Quasi Contract)

The Ninth Circuit defines the claim of quantum meruit in *In re De Laurentiis Entertainment Group Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992), as follows:

> "Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant . . . Quantum meruit is based *not* on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation. B. Witkin, *supra*, at § 12."

Quantum meruit/quasi-contract claims are not barred where there is an existing contract between the parties if the contract is ineffective for some reason. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014). Moreover, state law claims are independent of collective bargaining agreements, and thus, are not preempted by a CBA. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987); *see also Heyer v. Morris Okun, Inc.*, 2003 WL 21991583, at * 4 (S.D. N.Y. 2003), citing *Caterpillar Inc.* [state law quantum meruit/quasi-contract claim for unpaid wages was not preempted by the collective bargaining agreement because the CBA did not cover or address the commission wages sought by Plaintiff]. Indeed, the Pilot's CBA here acknowledges this rule.[1] Finally, as long as a plaintiff "seeks only one recovery, [he] is entitled to pursue both contract claims and quantum meruit claims arising out of the same transaction." *In re De Laurentiis Entertainment Group Inc.*, at p. 1272, fn. 3.

Here, the Classes are entitled to summary judgment on the issue of United's liability under the state law claim of quantum meruit, because, when the Class Members are on-call on Reserve status, and paid the leading pay value of Line Value (e.g., flight-related time), they are not paid *at all* for their Reserve time. Although the CBA(s) do provide for payment of the Reserve time when the leading pay value is MPG, they do not cover or specify payment for Reserve time when the leading pay value is Line Value. Accordingly, the Classes are entitled to summary judgment against United on the issue of liability on their quantum meruit claim.

**Second Cause of Action (Unpaid Minimum Wage)**

Labor Code sections 1182.12, 1194, and 1197, and IWC Wage Order No. 9-2001, §4(B), all require that employers pay California workers at least the applicable minimum wage for all hours worked.

---

[1] The Pilot CBA states in relevant part: "Nothing in this Agreement shall be construed as a waiver of any Pilot's right(s) under any applicable laws and regulations. To the extent that any provision of this Agreement, past practice or Company policy is in conflict with applicable laws or regulations, applicable law or regulations shall govern and shall be enforceable according to their terms ..." (See Pilot CBA, pg. 707, sec. 21-U, attached as Ex. 2 to Hanson Decl.).

As set forth above, when the Class Members are on-call on Reserve status, and paid the leading pay value of Line Value (e.g., flight-related time), they are not paid *at all* for their Reserve time because, under United's pay policy, they only get paid for Reserve time if the leading pay value is MPG. Thus, when Line Value is the pay value paid to the Class Members on Reserve status, they are paid *nothing* for Reserve time, which means they are not paid the minimum wage required by Labor Code sections 1182.12, 1194, and 1197, and IWC Wage Order No. 9-2001, §4(B). Accordingly, the Class Members are entitled to summary judgment on the issue of United's liability for unpaid minimum wages.

### Third Cause of Action (Unpaid Contractual Wages)

In *Oman v. Delta Air Lines, Inc.*, *supra*, 9 Cal.5th at p. 780, the California Supreme Court explains how a violation of the no-borrowing rule causes violations of Labor Code sections 221 and 222:

> "Specifically, Labor Code section 221 prohibits an employer from paying wages and then recouping some portion of the wages as a kickback or secret deduction; Labor Code section 222 prohibits underpayment of wages established by a collective bargaining agreement; . . . Wage borrowing would violate these statutes by reducing compensation, for the hours from which wages were borrowed, below the contractually agreed-upon level."

United violates the *Oman* no-borrowing rule and Labor Code sections 221 and 222 by reducing the contractually agreed upon Line Value wages (related to flight time) below that specified in the CBAs to compensate for Reserve time when the Class Members are on Reserve status and paid the leading pay value of Line Value (not MPG). Accordingly, the Class Members are entitled to summary judgment against United on the issue of United's liability under Labor Code sections 221 and 222.

### Fourth Cause of Action (Waiting Time Penalties)

Labor Code section 201(a) requires employers to pay all wages owed to employees at the time of termination and Labor Code section 202(a) requires employers to pay all wages owed to employees who resign not later than 72 hours after resignation.

As discussed above, as a result of United's no-borrowing rule violation, United has also violated Labor Code sections 201(a) and 202(a) with respect to those Class Members who have been terminated or have resigned. This is because these Class Members are owed wages for Reserve time and/or flight-related time either because Line Value pay was illegally reduced to compensate for Reserve time, or Reserve time was not paid at all. Accordingly, the Class Members are entitled to summary judgment against United on the issue of United's liability under Labor Code sections 201(a) and 202(a).

### Fifth Cause of Action (UCL - Unfair Business Practices)

California's Unfair Competition Law (UCL), Business & Professions Code section 17200 et seq., borrows violations of other laws and "treats them as unlawful practices independently actionable under the [UCL]." *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal.App.4th 1093, 1103 (1996). The other laws include California's Labor Code and labor laws. *Cortez v. Purolator Air Filtration Products Company*, 23 Cal.4th 163 (2000). Section 17203 of the UCL gives courts the power to enjoin the violations of the various laws giving rise to the UCL claim. Likewise, the Court here has certified a Rule 23(b)(2) Class for injunctive or declaratory relief. (Document 50, Class Cert. Order, pg. 12, ln. 4 - pg. 13, ln. 8).

United's violations of the no-borrowing rule, and resulting violations of California's other labor laws set forth above, are continuing and ongoing. Thus, the Rule 23(b)(2) Class Members seek: (1) a declaratory judgment from this Court stating that United is in violation of California's no-borrowing rule and in violation of the other California labor laws discussed above as a result of its violation of the no-borrowing rule; and (2) an injunction from this Court enjoining United from any further violations of California's no-borrowing rule and enjoining any further violations of the other California labor laws discussed above that result from its violation of the no-borrowing rule.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.  <u>The PAGA Claims</u>

The PAGA claims are derivative of the Labor Code claims discussed above (e.g., Causes of Action Two through Four). Pursuant to the Labor Code Private Attorneys General Act (Lab. Code § 2698 et seq.), Plaintiffs, on behalf of the State of California and the Aggrieved Employees, bring a representative action seeking civil penalties based upon United's violations of the specific Labor Code sections discussed below. Lab. C. §§ 2699(a), 2699.5. This motion seeks summary judgment on the issue of liability under PAGA based upon United's violations of the underlying Labor Code provisions.

### Sixth Cause of Action (PAGA Minimum Wage Violations)

Labor Code sections 1182.12, 1194, and 1197, all require that employers pay California workers at least the applicable minimum wage for all hours worked.

As set forth above, when the Aggrieved Employees are on-call on Reserve status, and paid the leading pay value of Line Value (e.g., flight-related time), they are not paid *at all* for their Reserve time because, under United's pay policy, they only get paid for Reserve time if the leading pay value is MPG. Thus, when Line Value is the pay value paid to the Aggrieved Employees on Reserve status, they are paid *nothing* for Reserve time, which means they are not paid the minimum wage required by Labor Code sections 1182.12, 1194, and 1197. Accordingly, the Aggrieved Employees are entitled to summary judgment on the issue of United's liability under PAGA for unpaid minimum wage violations.

### Seventh Cause of Action (PAGA Unpaid Contractual Wages)

In *Oman v. Delta Air Lines, Inc*., *supra*, 9 Cal.5[th] at p. 780, the California Supreme Court explains how a violation of the no-borrowing rule causes violations of Labor Code sections 221 and 222:

> "Specifically, Labor Code section 221 prohibits an employer from paying wages and then recouping some portion of the wages as a kickback or secret deduction; Labor Code section 222 prohibits underpayment of wages established by a collective bargaining agreement; . . . Wage borrowing

would violate these statutes by reducing compensation, for the hours from which wages were borrowed, below the contractually agreed-upon level."

United violates the *Oman* no-borrowing rule and Labor Code sections 221 and 222 by reducing the contractually agreed upon Line Value wages (related to flight time) below that specified in the CBAs to compensate for Reserve time when the Aggrieved Employees are on Reserve status and paid the leading pay value of Line Value (not MPG). Accordingly, the Aggrieved Employees are entitled to summary judgment on the issue of United's liability under PAGA based upon United's violations of Labor Code sections 221 and 222.

**Eighth Cause of Action (PAGA Waiting Time Violations)**

Labor Code section 201(a) requires employers to pay all wages owed to employees at the time of termination and Labor Code section 202(a) requires employers to pay all wages owed to employees who resign not later than 72 hours after resignation. As discussed above, as a result of United's no-borrowing rule violation, United has also violated Labor Code sections 201(a) and 202(a) with respect to those Aggrieved Employees who have been terminated or have resigned. This is because these employees are owed wages for Reserve time and/or flight-related time either because Line Value pay was reduced to compensate for Reserve time, or Reserve time was not paid at all. Accordingly, the Aggrieved Employees are entitled to summary judgment on the issue of United's liability under PAGA based upon United's violations of Labor Code sections 201(a) and 202(a).

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court grant their Motion for Partial Summary Judgment in its entirety.

Dated: September 29, 2021                    Law Offices of Kirk D. Hanson

/s/ Kirk D. Hanson
Kirk D. Hanson, Esq.
Attorneys for Plaintiffs