1
2
3
4
5
6
7

<div style="text-align:center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

</div>

| | |
|---|---|
| CHARLES E. WARD, et al., | Case No. 19-cv-03423-LB |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| UNITED AIRLINES, INC., | |
| Defendant. | Re: ECF No. 65 and 70. |

**INTRODUCTION**

The parties dispute whether United Airlines' compensation policies for "reserve" pilots and flight attendants (*i.e.*, pilots and flight attendants who are on call for flight assignments) comply with California wage law. The court previously certified two classes: California-based pilots and California-based flight attendants.[1]

Under the parties' collective bargaining agreements (CBAs), United gives flight crew a minimum guaranteed salary, even if they fly only occasionally or not at all when they are on call. But if they fly, and the compensation calculation for the flight activity exceeds the minimum

---

[1] Second Am. Compl. (SAC) – ECF No. 35 at 10–17 (¶¶ 24–48); Pls.' Mot. For Summ. J. – ECF No. 65 at 5–8; Order Granting Mot. For Class Certification – ECF No. 50 at 13; Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

<div style="text-align:center; writing-mode:vertical-rl">United States District Court<br>Northern District of California</div>

guarantee, then it pays the flight crew the higher pay. The plaintiffs contend that when United pays flight crew based on flight activity, it is borrowing wages from flight time to compensate for time on call, in violation of *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020). There, the California Supreme Court held in part — in accordance with established California law — that an employer cannot average pay over uncompensated hours. *Id.* at 781. This is known as the "no borrowing" rule. The *Oman* court also held that a contract-based pay scheme for a flight crew that has multiple payment formulas does not violate the no-borrowing rule if the overall scheme accounts for all work hours and pays at least minimum wage. *Id.* at 789.

The plaintiffs contend that if flight pay exceeds the minimum guarantee, then United is not paying for on-call time, and it must pay for both, or else it violates the no-borrowing rule. United counters that it is using contract-based compensation formulas, which *Oman* allows. Both parties moved for summary judgment on the ground that the undisputed facts entitle them to summary judgment under *Oman*. United also contends that the Railway Labor Act preempts plaintiffs' claims.[2] The court grants United summary judgment. Individual components of pay policies should not be evaluated in isolation. *Oman*, 9 Cal. 5th at 786. United's overall pay policies do not amount to "wage borrowing" because United's pay policies guarantee payment for all hours worked and payment of all wages owed under the pilots' and flight attendants' respective CBAs. In sum, United's pay schemes comply with California law as articulated by the court in *Oman*. The court does not reach United's preemption argument in view of the conclusion that the pay schemes do not violate California law.

## STATEMENT

United pays its pilots and flight attendants on a "bid period" basis.[3] The formulas used to determine the pay owed to pilots and flight attendants during a particular bid period, which

---

[2] Pls.' Mot. for Summ. J. – ECF No. 65 at 5–11; Def.'s Mot. for Summ. J. – ECF No. 70 at 6–7.

[3] Pls.' Mot. for Summ. J. – ECF No. 65 at 12, 16–17; Def.'s Mot. for Summ. J. – ECF No. 70 at 8, 10, 13; Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 65-3 at 15–17 (pp. 49:10–51:14), 40–41 (pp. 78:13–79:12); Krabbe Dep., Ex. 4 to Hanson Decl. – ECF No. 65-3 at 95 (pp. 24:2–24:20), 103–106 (pp. 71:17–74:18).

1   roughly corresponds to a calendar month, differ depending on whether the pilots and flight

2   attendants are on "lineholder" or "reserve" status during the relevant bid period.[4] The methods for

3   calculating pay are provided by separate CBAs between United and its pilots and flight

4   attendants.[5]

5       Under the pilot's CBA, United pays reserve pilots the greater of the minimum-pay guarantee

6   or line-pay value (*i.e.*, pay based on flight-related activity).[6] There are different types of reserve

7   pilot status: (1) long-call status (thirteen-hour advance notice before departure); (2) short-call

8   status (two-and-a-half hours before the reporting time for a flight); and (3) field-standby status

9   (requiring the pilot to be at the airport).[7] A pilot's trips and activities during the bid period

10   determine the pilot's line-pay value. Factors relevant to this calculation include minutes away

11   from the pilot's base airport, minutes on duty, calendar days away from the base airport, and the

12   greater of actual or scheduled flight time paid at the pilot's hourly rate.[8] In other words, line-pay

13   value is based on a pilot's flight-related activity. The minimum-pay guarantee formula, on the

14   other hand, calculates pilots' pay at their "blended rate," which is an hourly rate determined by

---

[4] Pls.' Mot. for Summ. J. – ECF No. 65 at 12, 16–20; Def.'s Mot. for Summ. J. – ECF No. 70 at 8; Carlson Dep., Ex. A to KohSweeney Decl. – ECF No. 45-1 at 11–12 (pp. 49:3–50:5); Krabbe Dep., Ex. B to KohSweeney Decl. – ECF No. 45-1 at 56–58 (pp. 71:17–73:9).

[5] *See* Agreement Between United Airlines, Inc. and the Air Line Pilots in the Serv. of United Airlines, Inc. as Represented by the Air Line Pilots Ass'n, Int'l, Ex. C to KohSweeney Decl. – ECF No. 45-1 at 82 (Sec. 1-A); 2016 – 2021 Flight Attendant Agreement, Ex. D to KohSweeney Decl. – ECF No. 45-1 at 166 (Sec. 1, A.1.) (UNITED 000004).

[6] Pls.' Mot. for Summ. J. – ECF No. 65 at 14; Def.'s Mot. for Summ. J. – ECF No. 70 at 10; Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 65-3 at 40–41 (pp. 78:3–79:12), 51 (pp. 143:5–143:15); Carlson Dep., Ex. A to KohSweeney Decl. – ECF No. 45-1 at 26 (pp. 80:2–80:17); Agreement Between United Airlines, Inc. and the Air Line Pilots in the Serv. of United Airlines, Inc. as Represented by the Air Line Pilots Ass'n, Int'l, Ex. C to KohSweeney Decl. – ECF No. 45-1 at 116 (Sec. 3-C-4);

[7] Pls.' Mot. for Summ. J. – ECF No. 65 at 12–13; Def.'s Mot. for Summ. J. – ECF No. 70 at 9; Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 65-3 at 18–27 (pp. 52:13-61:4), 36–38 (pp. 74:14–76:11).

[8] Pls.' Mot. for Summ. J. – ECF No. 65 at 14; Def.'s Mot. for Summ. J. – ECF No. 70 at 10–11; Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 65-3 at 36–38 (pp. 74:14–76:11), 44–51 (pp. 132:13–134:24, 139:3–143:7); Carlson Dep., Ex. A to KohSweeney Decl. – ECF No. 45-1 at 26 (pp. 80:8–80:17).

United States District Court
Northern District of California

1    seniority, for four hours, three minutes, and twenty seconds for each day the pilot is on reserve

2    status, whether long-call, short-call, or field standby.[9]

3        The CBA governing compensation for U.S.-based United flight attendants provides for a pay

4    scheme that is similar to the pay scheme applicable to U.S.-based United reserve pilots. Each bid

5    period, United pays reserve flight attendants either (1) a minimum-pay guarantee, which is

6    seventy-eight hours per bid period, or (2) the value of their flying activity.[10] The value of flight

7    attendants' flying activity is calculated according to (1) the duty period rig, which pays the flight

8    attendant for the entire duty day from report time to release time, (2) the greater of actual or

9    scheduled flight time, (3) the trip rig, which pays the flight attendant for the entire trip from report

10   time of the first flight of a trip to release time on the last flight of a trip, and (4) the five-hour

11   average, which pays the flight attendant a minimum of five hours for each duty period in a trip.[11]

12       The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[12] The court held

13   a hearing on December 2, 2021.

15                          **SUMMARY-JUDGMENT STANDARD**

16       The court must grant summary judgment where there is no genuine dispute as to any material

17   fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

18   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may

19   affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is

20   genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving

21   party. *Id.* at 248–49.

---

[9] Pls.' Mot. for Summ. J. – ECF No. 65 at 13–15; Def.'s Mot. for Summ. J. – ECF No. 70 at 10–11; Carlson Dep., Ex. A to KohSweeney Decl. – ECF No. 45-1 at 17–18 (pp. 58:8–59:23), 27–28 (pp. 102:02–103:10); Carlson Dep., Ex. 1 to Hanson Decl. – ECF No. 65-3 at 40–41 (pp. 78:3–79:12); Agreement Between United Airlines, Inc. and the Air Line Pilots in the Serv. of United Airlines, Inc. as Represented by the Air Line Pilots Ass'n, Int'l, Ex. C to KohSweeney Decl. – ECF No. 45-1 at 108 (Sec. 3-A-3).

[10] Krabbe Dep., Ex. 4 to Hanson Decl. – ECF No. 65-3 at 103–110 (pp. 71:13–78:17).

[11] Krabbe Dep., Ex. 4 to Hanson Decl. – ECF No. 65-3 at 95–98 (pp. 24:4–27:23).

[12] *See* Consents – ECF Nos. 10 and 39.

1    To prevail, a party moving for summary judgment must show the absence of a genuine issue of

2    material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the

3    moving party must either produce evidence negating an essential element of the nonmoving

4    party's claim or defense or show that the nonmoving party does not have enough evidence of an

5    essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins.*

6    *Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d

7    1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the

8    moving party need only point out 'that there is an absence of evidence to support the nonmoving

9    party's case.'") (quoting *Celotex*, 477 U.S. at 325).

10   If the moving party meets its initial burden to demonstrate the absence of a triable issue of

11   material fact, then the burden shifts to the non-moving party to produce evidence supporting its

12   claims or defenses. *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1103. The non-moving party

13   may not rest upon mere allegations or denials of the other party's evidence, but instead must

14   produce admissible evidence that shows there is a genuine issue of material fact for trial. *See*

15   *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a

16   genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477

17   U.S. at 322–23.

18   In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

19   viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

20   *Radio Corp.*, 475 U.S. 574, 587 (1986). Although United asserts that plaintiffs have

21   mischaracterized certain facts, both parties agree that their dispute is a legal issue appropriate for

22   resolution on a motion for summary judgment.[13]

---

[13] Pls.' Reply in Supp. of Mot. for Summ. J. – ECF No. 73 at 6; Def.'s Reply in Supp. of Mot. for Summ. J. – ECF No. 74 at 5.

*United States District Court*
*Northern District of California*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ANALYSIS

The plaintiffs contend that United's pay schemes violate California law because flight-related activity may be used to determine total compensation for pilots and flight attendants during some bid periods that include some days when reserve pilots and flight attendants engage in flight-related activity and some days that do not involve any flight-related activity.[14] The plaintiffs argue that United violates California law by using flight-related activity to establish pay because United must, according to the plaintiffs, either "borrow" wages owed for flight-related activity to provide compensation for reserve days that do not involve any flight-related activity or simply fail to pay for those reserve days.[15] The plaintiffs do not dispute that United pays at least the applicable minimum wage for all hours worked when averaged over the pay period.[16]

United's overall pay policies always account for days when there is no flight-related activity because pay is based on flight-related activity only if the flight-related activity pay exceeds the minimum-pay guarantee. The requirement for United to weigh the minimum-pay guarantee, which is based on reserve days, against the flight-related activity pay before using flight-related pay to determine compensation ensures that reserve days are always part of the pay calculus. United thus does not violate California wage law, as set forth in *Oman v. Delta Airlines*. The court grants summary judgment in favor of United and denies the plaintiffs' summary-judgment motion.

### 1. California Wage Law After *Oman v. Delta Air Lines, Inc.*

In *Oman v. Delta Air Lines, Inc.*, the California Supreme Court found that the "compensation owed employees is a matter determined primarily by contract" and that California law includes two distinct protections for employees: (1) a right to be paid the applicable minimum wage for all

---

[14] Pls.' Mot. for Summ. J. – ECF No. 65 at 14–15, 18.

[15] *Id.* at 10.

[16] Pls.' Reply in Supp. of Mot. for Summ. J. – ECF No. 73 at 6 ("United proudly touts the fact that all pilots and flight attendants are paid at least the minimum wage for all hours worked when the hours are averaged over the pay period.").

1   hours worked, and (2) a "right to receive the wages promised in a contract or collective bargaining

2   agreement." 9 Cal. 5th at 780–82.

3       Under the pay scheme at issue in *Oman*, Delta paid flight attendants per "rotation," which

4   encompassed a series of flights over several days. *Id.* at 783. Within the rotation were "duty

5   periods," which began when a flight attendant reported at the airport for a flight and concluded

6   after the last flight of the period. *Id*. For each rotation, Delta agreed to pay flight attendants based

7   on a procedure that compared the sum of the maximum pay for each duty period within a rotation

8   with a formula based on the length of the rotation. *Id.* at 783–84 n.6. Delta agreed to pay the

9   greatest of the sum of the duty period calculations or the calculation based on the length of the

10  rotation. *Id.* at 783–84.

11      To calculate pay, Delta would first determine compensation for each duty period by

12  calculating "the greatest of: 1) flight time (includes deadhead flight time, minutes under, and flight

13  pay for ground time), or 2) 4:45 minimum duty period credit (MDC), or 3) 1 for 2 duty period

14  credit (DPC)." *Id.* at 783–84 (cleaned up). Then Delta would determine the actual compensation

15  owed for a rotation by comparing the sum of the maximum pay for all duty periods within a

16  rotation with a fourth formula based on the length of the rotation. *Id.* Delta would pay flight

17  attendants the greater of these two amounts. *Id.*

18      The *Oman* plaintiffs argued, in part, that the flight-time formula violated California law

19  because that formula determined pay for a rotation based on the period between when "each flight

20  departs the block, or gate, and arrives at the destination gate" and did not directly factor in the time

21  (1) between "reporting for duty and the first flight block out," (2) "during any between-flights sit

22  time," and (3) "after the last flight block in until release." *Id.* at 785–86.

23      The court rejected the plaintiffs' argument. *Id.* The court found that "the flight time formula"

24  was just one a component of a "single compensation scheme that constitutes Delta's contractual

25  promise to its flight attendants." *Id.* The court further found that the compensation scheme

26  guaranteed a "level of compensation for each *duty period* and each *rotation*," but did not

27  contractually guarantee certain pay for any "on-duty hours." *Id.* at 786. In this regard, the court

28  noted that Delta's disclosure of "the flight time formula" used to arrive at a "fixed amount of

United States District Court
Northern District of California

compensation for a particular rotation" did not plausibly amount to a promise to compensate flight attendants for "flight time" and not to pay for other hours. *Id.*

In short, the court found that a pay scheme that under certain conditions determines pay by a subset of activities within a larger set of work hours is acceptable so long as the overall pay scheme accounts for all work hours and pays at least minimum wage. *Id.* at 789. Accordingly, the *Oman* court held that Delta's compensation program complied with California law. *Id.* at 788.

### 2. The Plaintiffs' Claims

The plaintiffs' argument in this case is materially identical to the argument the court rejected in *Oman*. Like the plaintiffs in *Oman*, the plaintiffs' claims here depend on evaluating a component of United's pay policy in isolation without addressing the component's place in United's overall policy.

The plaintiffs contend that United violates California law when "it pays its on-call Reserve pilots and flight attendants" based on flight-related activity and not the minimum-pay guarantee.[17] In the plaintiffs' view, by calculating pay based on flight-related activity, United necessarily either illegally "borrows wages promised for the flight-related time period to compensate for the on-call Reserve time period" or fails to "pay the pilots and flight attendants at all for their Reserve time."[18]

The plaintiffs assert that United's pay scheme is materially different from Delta's pay scheme that the court considered in *Oman* because Delta's pay scheme only applied to the "Rotation time period" and the "Rotation" related only "to flight-related duties" while United's pay scheme encompasses reserve time and flight-related time during the bid period.[19] This is a distinction without a difference: in both cases, the alleged violation occurs when one part of a larger pay scheme is used to calculate pay without directly addressing all hours worked even though the

---

[17] Pls.' Mot. for Summ. J. – ECF No. 65 at 10.

[18] *Id.*

[19] *Id.* at 23–24.

United States District Court
Northern District of California

overall pay scheme that determines which calculation is used to determine pay accounts for all hours worked.

### 3. United's Pay Policies Comply with California Law

The *Oman* court's holding hinged on its determination that individual components of a pay scheme should not be viewed in isolation. Yet that is precisely how the plaintiffs argue that the court should evaluate United's policies. When evaluated as a whole, there is nothing improper about United's method for calculating the pay of reserve pilots and flight attendants.

The plaintiffs in this case urge the court to find that United's pay scheme is illegal because one facet of the compensation program calculates reserve pilot and flight attendant pay based on flight-related activity and, under certain circumstances, United may determine pay in a bid period according to flight-related activity without directly addressing reserve days. The plaintiffs' contention is incorrect. United uses flight-related activity to determine pay only when the pay for flight-related activity exceeds the minimum-pay guarantee. Therefore, whenever flight-related activity is used to calculate the pay of a pilot or flight attendant, United has always first compared the flight-related activity pay with the minimum-pay guarantee, which is determined based on reserve days. In other words, both reserve time and time spent on flight-related activities are always part of the pay calculation.

For example, in July 2015, plaintiff Ward received pay based on his flight-related activity because he had a large amount of flight-related activity that resulted in pay that exceeded the minimum-pay guarantee.[20] On the other hand, in August 2015, plaintiff Ward received the minimum-pay guarantee because the pay calculated according to the small amount of flight-related activity he had during that bid period did not exceed the minimum-pay guarantee.[21] Reserve days are, therefore, always factored into the pay scheme because United's pay scheme always compares

---

[20] Ward Decl. in Supp. of Mot. for Summ. J. – ECF No. 65-1 at 16–17, Ex. 3; Pls.' Mot. for Summ. J. – ECF No. 65 at 15–16.

[21] Ward Decl. in Supp. of Mot. for Summ. J. – ECF No. 65-1 at 19–20, Ex. 4; Pls.' Mot. for Summ. J. – ECF No. 65 at 15–16.

United States District Court
Northern District of California

flight-related activity pay with the minimum-pay guarantee before determining a pilot's or flight attendant's pay during a particular bid period. United's pay policies for reserve pilots and flight attendants do not violate California law for the same reasons that the *Oman* court held that Delta's policy complied with California law.

Under the Delta pay scheme at issue in *Oman*, Delta would determine a flight attendant's pay for a rotation based on the flight-time formula — *i.e.*, a formula that accounted for only the period between when "each flight departs the block, or gate, and arrives at the destination gate" — only if the flight time formula pay would result in the greatest "duty period" pay and the sum of the "duty period" pay in the rotation exceeded the alternative pay formula based on the length of the rotation. *Oman*, 9 Cal. 5th at 783–86. The flight-time pay formula did not directly account for certain time during the duty period, including, for example, time between "reporting for duty and the first flight block out." *Id.* at 786 ("[T]here are on-duty periods to which the flight time formula does not directly attribute compensation, such as preflight briefings."). Like the plaintiffs here, the *Oman* plaintiffs argued that "Delta's failure to specify a particular pay rate specific to these periods of time violates the obligation to pay at least minimum wage for all hours worked . . . [and] violate[s] the no-borrowing rule." *Id.*

The *Oman* court found that even though Delta's pay scheme could — under certain conditions — result in Delta's paying flight attendants by reference to "flight time" alone without directly accounting for other work time, the overall pay scheme did not violate California law because the pay scheme promised to pay a "level of compensation for each *duty period* and each *rotation*" and did not promise to pay for certain hours. *Id.* There is nothing in the *Oman* decision suggesting that the holding depended on the fact that the time that was not directly accounted for in the final pay calculation was flight-related time.

To the extent the plaintiffs rely upon decisions predating *Oman*, these cases involved pay policies that were materially different from United's policies. For example, the collective bargaining agreement at issue in *Armenta v. Osmose, Inc.* established an hourly rate for all work hours, and the employer expressly refused to compensate employees for certain "nonproductive"

1    tasks. 135 Cal. App. 4th 314, 317, 325–26 (2005). In contrast, the CBAs governing pay for United's

2    pilots and flight attendants do not unconditionally promise a specific hourly rate for all work hours.

3        The decision in *Gonzalez v. Downtown LA Motors, LP*, is similarly distinguishable. The

4    employer in *Gonzales* agreed to pay compensation "on a piece-rate basis" (*i.e.*, based on

5    completed tasks) and would supplement pay only when an employee's piece-rate pay fell below a

6    minimum wage floor calculated based on an employee's total time at the work site. 215 Cal. App.

7    4th 36, 40–42 (2013). The court found that the pay policy violated California law because it

8    required impermissibly averaging wages contractually owed for specific tasks to account for

9    otherwise uncompensated work hours. *Id.* at 50. United's pay policies are different than the policy

10   at issue in *Gonzales* because United never unconditionally agreed to always pay a particular rate

11   for certain tasks.

12       The plaintiffs also cite *Bluford v. Safeway Inc.*, where the court found that Safeway's piece-

13   rate method for paying truck drivers violated California law. 216 Cal. App. 4th 864, 872 (2013).

14   But the pay scheme at issue in *Bluford* was substantially different from United's pay policies. In

15   *Bluford*, the court addressed Safeway's pay policies, which determined pay based on (1) mileage

16   rates, (2) fixed rates for certain tasks, (3) an hourly rate for a predetermined number of minutes for

17   certain tasks, and (4) an hourly rate for breakdowns and other delays. *Id.* at 867. The overall

18   system did not account for rest periods, and the court rejected the contention that the compensation

19   system was designed to indirectly incorporate rest-period compensation. *Id.* at 872. For example,

20   unlike Delta's policy addressed in *Oman* and United's policies at issue in this case, Safeway's

21   policies did not employ any competing alternative pay calculations that included the allegedly

22   uncompensated time (*i.e.*, rest periods). United's system accounts for all working time, including

23   reserve days, because pilots and flight attendants are never paid using the flight-related-activity

24   method unless the flight-related activity pay calculation exceeds the minimum-pay guarantee.

25       In sum, like Delta's policies discussed in *Oman*, United's overall policies promised to pay

26   according to a formula that (1) accounted for all work hours, (2) did not require "borrowing" from

27   wages contractually owed for specific tasks or hours, and (3) always exceeded the minimum wage

28   on a per bid period basis. *See Oman*, 9 Cal. 5th at 788 ("Delta satisfies state minimum wage law

without ever needing to compromise its contractual commitments."). Accordingly, United's pay policies do not violate California law. Because the court finds that United is entitled to summary judgment on the basis that its pay policies do not violate California wage law as stated in *Oman*, the court does not reach United's preemption argument.

## CONCLUSION

The court grants United's motion for summary judgment and denies the plaintiffs' motion for partial summary judgment. This disposes of ECF Nos. 65 and 70.

**IT IS SO ORDERED.**

Dated: December 17, 2021



LAUREL BEELER
United States Magistrate Judge